

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-12-2000

# Campbell v. Vaughn

Precedential or Non-Precedential:

Docket 98-1744

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Campbell v. Vaughn" (2000). *2000 Decisions.* Paper 76.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/76

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 12, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 98-1744

DEAN NATHAN CAMPBELL, Appellant

v.

DONALD T. VAUGHN; THE DISTRICT ATTORNEY OF THE
COUNTY OF DELAWARE; THE ATTORNEY GENERAL
OF THE STATE OF PENNSYLVANIA

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civ. No. 97-cv-02677)
District Judge: Honorable John P. Fullam

Argued: January 10, 2000

Before: BECKER, Chief Judge, ALITO and BARRY,
Circuit Judges.

(Filed: April 12, 2000)

        PETER GOLDBERGER, ESQUIRE
         (ARGUED)
        PAMELA A. WILK, ESQUIRE
        50 Rittenhouse Place
        Ardmore, PA 19003-2276

        Counsel for Appellant

VRAM NEDURIAN, JR., ESQUIRE
   (ARGUED)
Assistant District Attorney
A. SHELDON KOVACH, ESQUIRE
Deputy District Attorney
Chief, Law & Appeals Unit
PATRICK L. MEEHAN, ESQUIRE
District Attorney
Delaware County Court House
201 West Front Street
Media, PA 19063-2683

Counsel for Appellees

OPINION OF THE COURT

BECKER, Chief Judge.

This is an appeal by Dean Campbell, a Pennsylvania prison inmate, whose petition for writ of habeas corpus pursuant to 28 U.S.C. S 2254(d) was denied by the District Court. Campbell contends that, because his trial counsel did not properly inform him of his right to testify at trial, counsel rendered ineffective assistance by interfering with his constitutional right to testify. In the alternative, Campbell seeks a new evidentiary hearing, pursuant to 28 U.S.C. S 2254(e)(2), so that the District Court can complete the factual record on which his substantive claim rests. Campbell contends that the state courts failed to make a finding of historical fact as to whether trial counsel informed him that it was his choice to testify on his own behalf. Without such a finding, he argues, it is impossible to address the merits of his substantive claim.

We reject both of Campbell's claims. Addressing the S 2254(e)(2) claim first, we hold that, while they were not artfully expressed, the state trial court made sufficient findings of fact regarding Campbell's communications with his trial counsel. That court's written opinion made it clear that the court implicitly found that Campbell's trial counsel informed him of his right to testify. This implicit factual finding, which is binding under the federal habeas statute

2

and Supreme Court precedent, undermines Campbell's substantive constitutional claim.

Turning to Campbell's substantive claim, we hold that, on the facts presented, the state appellate court's conclusion that Campbell's trial counsel did not render ineffective assistance or interfere with his right to testify in warning Campbell that testifying on his own behalf might be unwise was not " `contrary to' or an`unreasonable application of ' clearly established federal law, as determined by the Supreme Court," Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 887 (3d Cir. 1999) (en banc) (quoting 28 U.S.C. S 2254(d)(1)), nor was it reached " `based on an unreasonable determination of the facts in light of the evidence,' " id. at 887-88 (quoting 28 U.S.C. S 2254(d)(2)). Accordingly, we will affirm the order of the District Court denying habeas relief.[1]

I. Factual Background and Procedural History

The facts before the state trial court may be summarized as follows. One night in January 1983, Campbell and his

_____

1. We note that Campbell's constitutional claim is something of a hybrid. He does not allege that the Commonwealth deprived him of his right to testify--the normal scenario in a right-to-testify claim, see, e.g., Rock v. Arkansas, 483 U.S. 44, 61 (1987) (holding that state's evidentiary rules interfered with criminal defendant's right to testify on his or her own behalf)--but rather that his trial counsel's ineffective assistance interfered with that right. (For the sake of convenience, throughout the opinion we refer to Campbell's claim as his "right-to-testify/ineffective-assistance claim.")

As we ultimately conclude that Campbell's counsel did not interfere with his right to testify or render ineffective assistance, see infra Part III, we do not address the standard by which we would judge the harmlessness or prejudicial nature of counsel's actions had they been ineffective or injurious to Campbell's right to testify. This appears to be an open question, and the parties disagree about which standard should apply. Campbell argues that because the right to testify is a fundamental right, the denial of that right should per se render a trial unfair. Counsel for the Commonwealth argues that because Campbell's claim hinges on a finding of ineffective assistance of counsel, the Strickland v. Washington, 466 U.S. 668, 691-96 (1984), actual prejudice standard should apply. We take no position in this dispute.

3

brother, Michael, waited at an intersection at the end of a freeway off-ramp in Chester, Pennsylvania. John Maletsky and his four-year old daughter, Kimberly, drove down the off-ramp and waited at the stop light. Campbell and Michael approached the car. Campbell pulled Maletsky from the car and shot him twice. Michael jumped into the car and drove away with the child still in the passenger seat.

Maletsky's wife, Deborah, who had been following her husband in another car, arrived on the scene shortly thereafter. She saw her husband struggling with Campbell near a curb, but did not see his car or their daughter. She called to her husband, and he pointed in the direction that Michael had driven. Deborah looked down the street and saw that her husband's car had been immobilized by ice. Campbell approached Deborah's car and grabbed her handbag. Deborah and Campbell began to struggle. After she pulled a hat from his head, Campbell ran down the street with Deborah's handbag. Deborah ran toward her husband's car, where she found Michael inside the car with their child. She convinced Michael to let her take the child. Michael then ran away. Maletsky died later that evening from gunshot wounds to the chest and stomach.

Campbell and Michael fled to Louisiana, but were apprehended there by local authorities. After the authorities gave Campbell the proper warnings, Campbell waived his rights and voluntarily confessed (with a great deal of contrition) that he had shot Maletsky and committed a number of other crimes against Maletsky and his wife. He thereafter waived the right to an extradition hearing and was transferred to Pennsylvania. Upon his arrival, the Commonwealth charged him with murder (18 Pa. Cons. Stat. S 2502), theft (id. S 3902), kidnapping (id. S 2901), reckless endangerment (id. S 2705), possessing the instruments of crime (id. S 907), and criminal conspiracy to commit other offenses (id. S 903).

Campbell's trial counsel was a public defender without a great deal of experience. He and Campbell disagreed on trial strategy. Trial counsel's greatest concern, given the heinous nature of Campbell's crimes, was that his client not be sentenced to death. Campbell did not take the

4

witness stand at trial, but he later asserted that he had wanted to take the stand so that he could explain his confession, assert an intoxication defense, and try to avoid a life sentence. Trial counsel responded that he counseled against such a strategy on the grounds that recanting his grief-ridden confession might alienate the jury and expose Campbell to a death sentence.

After a three-day trial, in May 1984, Campbell was convicted on all counts (the jury returned a second-degree murder conviction). On January 2, 1985, the trial judge sentenced him to serve a term of life imprisonment on the murder count and to consecutive terms aggregating to 13 to 39 years on the five other counts. Post-trial motions filed by Campbell's trial counsel were denied.

Campbell's trial counsel initiated but failed to perfect Campbell's appeal, to which he had a right under Pennsylvania law. Objecting to this failure, Campbell filed a pro se petition under the Post Conviction Hearing Act (PCHA) on May 2, 1986; an amended pro se petition on November 10, 1986; and a third petition, with the assistance of counsel, on January 4, 1987. In these papers, he asserted several grounds to support an ineffective-assistance-of-counsel claim, primarily focusing on the fact that trial counsel had failed to file a timely appellate brief, thereby precluding him from pursuing his right to appeal. In attempting to preserve his right to appeal, Campbell asked for an exception to statutory time-bar provisions in the form of permission to file a nunc pro tunc appeal with the Pennsylvania Superior Court--an intermediate appellate court. In addition to his nunc pro tunc request, among other things, he asserted that his trial counsel (1) interfered with his constitutional right to testify on his own behalf; (2) failed to emphasize the level of his intoxication at the time he committed the crime; and (3) failed to remove himself from the case in light of his inexperience.

On March 4, 1987, the PCHA court, which had also been the trial court, held an evidentiary hearing as it was required to do under Pennsylvania law. See Commonwealth v. Stokes, 440 A.2d 591, 595 (Pa. Super. Ct. 1982). At this hearing, the PCHA court undertook its duty to hear evidence regarding all of Campbell's claims that required

5

the development of a factual record. See Commonwealth v.
Elliot, 466 A.2d 666, 668 (Pa. Super. Ct. 1983). The PCHA
court heard evidence that Campbell's trial counsel had
failed to perfect Campbell's appeal; that trial counsel had
failed to assert Campbell's intoxication defense; and that
trial counsel was so inexperienced--this was hisfirst
homicide trial, at least according to Campbell--that in
failing to seek his own withdrawal from the case, he
rendered ineffective assistance.

Most importantly for our purposes, the court heard
evidence regarding Campbell's contention that trial counsel
had interfered with his constitutional right to testify on his
own behalf. In support of this claim, Campbell testified that
his trial counsel did not inform him of his right to testify,
that he had wanted to testify, and that the reason he did
not do so is that his trial counsel said not to. Trial counsel
also testified. He admitted that he had cautioned Campbell
against testifying, but insisted that he "[a]bsolutely" told
Campbell that it was Campbell's decision to take the stand.
The relevant testimony is reproduced in the margin. 2
_____

2. On examination by his counsel at the PCHA hearing, Campbell
testified as follows:

    Q: Did you indicate to [your trial counsel] that you wanted to
testify
    on your own behalf?

    A: Yes.

    Q: Did you testify on your own behalf.

    A: No.

    Q: Why not?

    A: Because he said not to, but I did want to testi fy because there
    was a number of things that I could have said to the jury . . . .

    Q: Did [your trial counsel] indicate to you that you had the right
to
    testify on your own behalf?

    A: He didn't come out and give it to me in no formal manner. He
just
    said, "I don't think you should testify ."

Appendix at 28a (emphasis added).

The testimony of Campbell's trial counsel on examination by

Campbell's lawyer at the PCHA hearing is as follows:

6

Neither man's testimony was corroborated, and the conflicting testimony created a credibility dispute.

At the conclusion of the hearing, the PCHA court determined that Campbell's trial counsel had negligently failed to file an appellate brief and that Campbell was entitled to a nunc pro tunc appeal. In a written opinion memorializing its decision, the court "refrained from ruling upon the merits of defendant's other grounds," Commonwealth v. Campbell, No. 666-84, at 2 (Pa. Ct. Common Pleas Jan. 6, 1988), as prescribed by Commonwealth v. Miranda, 442 A.2d 1133 (Pa. Super. Ct. 1982).3 In so refraining, the court nonetheless attempted to

_____

> Q: Did you ever--did the Court ever ask my clien t why he was not going to take the stand to testify on his own behalf?
>
> . . .
>
> A: I don't recall if we did it on the record or if he and I just discussed it at the counsel table together. I considered it that there would be absolutely no way that he could take the stand and preserve the question of trying to avoid the first degree murder question. If he took the stand in my opinion, and I told him this, that he could have the jury be alienated against him because his confession . . . was somewhat mitigating in that he expressed considerable remorse and if he were to take the stand and either give a different story or either try to explain it away, in my opinion, and I told him this, that I considered it to be a very substantial possibility that the jury would consider that his remorse has now been or had then been qualified. So I advised him not to take the stand.
>
> Q: But it was my client's position that he wanted to take the stand, is that correct?
>
> A: He wasn't certain as to what to do.
>
> . . .
>
> Q: Had you indicated to my client that he had a right to take the stand if he decided to?
>
> A: Absolutely, it was his decision, it was his life.

Appendix at 23a-26a (emphasis added).
3. Miranda holds that "once the PCHA court determines petitioner has been deprived of his appellate rights, it should refrain from ruling upon

the merits of the other claims and should grant petitioner the right to file
an appeal nunc pro tunc." 442 A.2d at 1138.

7

fulfill its obligation under Miranda, see id. at 1138, to "make the findings of fact" necessary to"see to it that the record" was complete for the appellate court that would subsequently be hearing Campbell's nunc pro tunc  appeal, Commonwealth v. Johnson, 444 A.2d 1291, 1293 n.2 (Pa. Super. Ct. 1982); see also Commonwealth v. Presbury, 467 A.2d 898, 898 (Pa. Super. Ct. 1983) (citing Pa. R. Crim. P. 1506(5) and other "decided cases" as the source of this duty).

The PCHA court made its findings of fact regarding Campbell's other ineffective-assistance claims in the following manner:

> The court, following the mandates of Commonwealth v. Miranda, supra, completed this record by allowing an evidentiary hearing concerning the other issues raised [the six ineffective-assistance-of-counsel claims other than the failure-to-file-an-appellate-brief claim]. Thus, the record is complete for appellate purposes [citing and quoting Miranda at length].
>
> It may be noted in passing that the allegedly new issues raised by defendant at his Post Conviction Hearing Act Hearing [the six other ineffectiveness claims] were either disposed of in this court's original Opinion [denying claims raised in post-trial briefing], or are clearly unsupported by the records (for example this was not trial counsel's first homicide trial . . . and the issue of intoxication was placed before the jury . .. .)
>
> The defendant has simply failed to carry his burden of establishing ineffectiveness as to any specific issue raised or collectively as to all of the issues raised.
>
> Respecting the Appellate Court mandate hereinabove cited, [Miranda] no further decision is made as to the additional issues of ineffectiveness claimed by defendant. The denial of his right to appeal has already been remedied. This court does respectfully suggest that the defendant's contention of ineffectiveness as to the additional issues has not been established by the evidence.

8

Commonwealth v. Campbell, No. 666-84, at 2-4 (Pa. Ct. Common Pleas Jan. 6, 1988) (emphasis added) (citations and footnote omitted).

In these four paragraphs, the PCHA court did not explicitly resolve the credibility dispute between Campbell and his trial counsel regarding the right-to-testify/ ineffective-assistance claim. However, the Commonwealth contends that the court did so implicitly with its repeated mention that the evidence did not support Campbell's ineffectiveness claims other than his right to appeal claim. See infra Section II.C (discussing whether the PCHA court, in fact, made this finding).

The Superior Court panel that heard Campbell's nunc pro tunc appeal did not advert to the PCHA court's failure to make an explicit finding regarding this disputed testimony. In its memorandum opinion, it reproduced the testimony given by Campbell's trial counsel at the PCHA hearing (also reproduced at supra note 2), without mentioning Campbell's testimony to the contrary. In ruling on the legal issue, the panel wrote:

> This testimony [that of Campbell's trial counsel] would indicate that [Campbell] made a decision not to testify after full consultation. In addition, it appears that counsel had a reasonable basis designed to further appellant's interests, for not calling him to testify. . . . We find no ineffectiveness in counsel's action.

Commonwealth v. Campbell, No. 1010 Philadelphia 1987, at 8 (Pa. Super. Ct. Jul. 26, 1988) (citations omitted). Based on this analysis, the Superior Court rejected Campbell's right-to-testify/ineffective-assistance claim, along with the host of claims that Campbell had asserted.

On April 18, 1997, Campbell filed a timely habeas petition, asserting several claims, including his right-to-testify/ineffective-assistance claim. The Magistrate Judge to whom the case was referred for a report or recommendation rejected all of Campbell's claims. Addressing Campbell's right to testify claim, she concluded "that the Superior Court's finding that Mr. Campbell decided not to testify after consultation with his counsel [was] not based on an

9

unreasonable determination of the facts in light[of] the evidence presented at the PCHA hearing." Campbell v. Vaughn, No. 97-2677, at 21-22 (E.D. Pa. June 5, 1998) (Magistrate Judge's Report and Recommendation) (emphasis added). Moreover, she concluded, neither was the "Superior Court's [legal conclusion] contrary to established Federal law" under the Strickland v. Washington, 466 U.S. 668 (1984), ineffective-assistance-of-counsel standard. Campbell, No. 97-2677 at 22 (emphasis added). The District Court adopted the Magistrate Judge's findings and entered an order denying Campbell's petition for writ of habeas corpus.

The District Court declined to grant a certificate of appealability pursuant to 28 U.S.C. S 2253(c)(1); however, this court granted the certificate on June 14, 1999. See Campbell v. Vaughn, No. 98-1774 (3d Cir. June 14, 1999). In so doing, we limited the certificate of appealability to Campbell's right-to-testify/ineffective-assistance claim. See id. The District Court had jurisdiction pursuant to 28 U.S.C. SS 2241(c)(3) and 2254(a). We have jurisdiction pursuant to 28 U.S.C. SS 1291 and 2253.

II. Whether a New Evidentiary Hearing is Required

The provisions of the federal habeas statute govern our review. It provides that "a determination of a factual issue made by a State court shall be presumed to be correct. The [habeas] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. S 2254(e)(1). In interpreting this statute, the Supreme Court has held that an implicit finding of fact is tantamount to an express one, such that deference is due to either determination. See Parke v. Raley, 506 U.S. 20, 35 (1992); Marshall v. Lonberger, 459 U.S. 422, 432-33 (1982); LaVallee v. Delle Rose , 410 U.S. 690, 692 (1973) (per curiam); see also McAleese v. Mazurkiewicz, 1 F.3d 159, 172 (3d Cir. 1993); Ahmad v. Redman, 782 F.2d 409, 413 (3d Cir. 1986).

A.

Campbell does not seek to introduce new evidence that would cast doubt upon the factual determinations made by

10

the state courts involved in this case. Rather, he argues that the PCHA court and the Superior Court made no factual "determination" to which we need to defer. In advancing this argument, he makes two contentions: (1) that both courts' treatment of the unresolved issue of fact created by Campbell's and his trial counsel's conflicting testimony was too indeterminate to be treated as a factual determination; and (2) that if the Superior Court made a definitive factual finding resolving this credibility dispute, the court did not have the power to do so under Pennsylvania law, and hence, its finding should be disregarded. Campbell therefore submits that, to resolve his substantive habeas claim, a new evidentiary hearing must be held--not so that new, or recently discovered, evidence may be introduced, but so that the District Court can determine, based on Campbell's live testimony and that of his trial counsel's whether, as a matter of fact, his trial counsel informed him that it was his decision whether to testify on his own behalf.

The Antiterrorism and Effective Death Penalty Act (AEDPA) amended the federal habeas statute in such a way as to limit the availability of new evidentiary hearings on habeas review. See 28 U.S.C. S 2254(e)(2). Prior to AEDPA, new evidentiary hearings were required in several circumstances. See Townsend v. Sain, 372 U.S. 293, 313 (1963) (listing six circumstances in which a hearing was required, including when "the material facts were not adequately developed at the state-court hearing"); Keeney v. Tamayo-Reyes, 504 U.S. 1, 11 (1992) (refining the Townsend standard by requiring that the petitioner "show cause for his failure to develop the facts in the state-court proceedings and actual prejudice resulting from that failure," but not curtailing Townsend's list); see also 28 U.S.C. S 2254(d) (1995) (amended by AEDPA, at 28 U.S.C.A. S 2254(e)(2) (West Supp. 1999)) (providing the pre-AEDPA standard for holding evidentiary hearings on habeas review).

AEDPA, in contrast, permits evidentiary hearings on habeas review, but only in a limited number of circumstances. See 28 U.S.C. S 2254(e).4 If Campbell is

_____

4. As amended by AEDPA, 28 U.S.C. S 2254(e)(2) provides:

If the applicant has failed to develop the factual basis of a claim in

correct that the state courts failed to resolve the factual issue on which his habeas petition rests, a new evidentiary hearing would be permitted, as the failure to develop the factual record would not be his fault. AEDPA and uniform case law interpreting it provide that if the habeas petitioner "has diligently sought to develop the factual basis of a claim for habeas relief, but has been denied the opportunity to do so by the state court, S 2554(e)(2) will not preclude an evidentiary hearing in federal court." Cardwell v. Greene, 152 F.3d 331, 337 (4th Cir. 1998) (collecting court of appeals cases that agree with this proposition).

However, even if a new evidentiary hearing is permitted under AEDPA--when it is solely the state's fault that the habeas factual record is incomplete--AEDPA, unlike Townsend and Keeney, does not require that such a hearing be held. Instead, federal courts have discretion to grant a hearing or not. In exercising that discretion, courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim. For example, in Cardwell, the court held that a new evidentiary hearing was permissible under AEDPA because it was the state's fault that the factual record was incomplete. See 152 F.3d at 338. The court nonetheless went on to conclude that the district court did not err in refusing to grant the petitioner an evidentiary hearing, because the petitioner "ha[d] failed to forecast any evidence beyond that already contained in

_____

State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--

     (A) the claim relies on--

     (i) a new rule of constitutional law, made retroac tive to cases on collateral review by the Supreme Court, that was previously unavailable; or

     (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

     (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

12

the record" that would help his cause, "or otherwise to explain how his claim would be advanced by an evidentiary hearing." Id.

Campbell, in contrast, has explained how a new hearing would advance his claim. Assuming arguendo, that he is correct that the Pennsylvania state courts did not resolve the credibility dispute between Campbell and his trial counsel, a new evidentiary hearing in which the Magistrate Judge or District Judge found that Campbell's testimony is to be believed would surely advance his right-to-testify/ ineffective-assistance claim. Such a finding would mean that trial counsel rendered ineffective assistance by unconstitutionally interfering with his right to testify. If Campbell is wrong, and the state courts made a finding of fact to which we must defer, then a new evidentiary hearing would not only not advance his right-to-testify/ineffective-assistance claim, it would be forbidden under the precepts of S 2254(e)(2) and case law interpreting it, because there would be no factual deficiency that a federal habeas court could redress.

B.

In addressing Campbell's S 2254(e)(2) claim, the Magistrate Judge, the District Judge, the Commonwealth, and Campbell have all concentrated on the Superior Court's statement that the record "would indicate" that Campbell's trial counsel informed his client that it was his decision to testify. Commonwealth v. Campbell, No. 1010 Philadelphia 1987, at 8 (Pa. Super. Ct. Jul. 26, 1988) (citations omitted). The Magistrate Judge, the District Judge, and the Commonwealth have reasoned that this is the determination of fact to which we must defer, and therefore that a S 2254(e)(2) hearing is inappropriate. Campbell contends both that the Superior Court's statement is not a determination of fact, and that the Superior Court, as an appellate court, did not have the power under Pennsylvania law to make such a finding on a cold record when making such a finding necessitated resolving a credibility dispute without having seen the witnesses testify. Neither the Magistrate Judge, the District Judge, nor the Commonwealth have addressed the latter argument.

13

The parties' and the Magistrate and District Judges' focus on the Superior Court opinion is not necessary. Under Pennsylvania law, the PCHA court was charged with making the finding of fact in question. See Commonwealth v. Johnson, 444 A.2d 1291, 1293 n.2 (Pa. Super. Ct. 1982) (describing the duty); Commonwealth v. Miranda , 442 A.2d 1133, 1138-43 (Pa. Super. Ct. 1982) (same). Accordingly, it was the PCHA court's duty to resolve the credibility dispute between Campbell and trial counsel before passing Campbell's legal claim to the Superior Court. See Commonwealth v. Elliot, 466 A.2d 666, 668 (Pa. Super. Ct. 1983); Johnson, 444 A.2d at 1293 n.2; Miranda, 442 A.2d at 1138; see also infra Section II.C (explaining this procedure). We believe the PCHA court made thisfinding of fact, to which we must defer, and turn to this matter now. Before doing so, we note that in relying on the PCHA court's finding, we express no opinion as to whether in this precise factual circumstance, the Superior Court could have made this finding of fact on the cold appellate record, such that we would need to defer to it pursuant to AEDPA.

C.

In determining whether the PCHA court made a finding of fact resolving the credibility dispute between Campbell and his trial counsel, the prime evidentiary source is the PCHA court's written opinion. Through its repeated references to the insufficiency of the evidence that Campbell adduced to support his myriad ineffective-assistance-of-counsel claims, the PCHA court demonstrated--if in somewhat circumabulatory fashion--that it did not credit Campbell's testimony that his trial counsel failed to inform him of his right to choose to testify. While never explicitly crediting the testimony of Campbell's trial counsel, the PCHA court wrote:

> It may be noted in passing that the allegedly new issues raised by defendant at his Post Conviction Hearing Act Hearing . . . are clearly unsupported by the records . . . .
>
> . . .

14

The defendant has simply failed to carry his burden of establishing ineffectiveness as to any specific issue raised or collectively as to all of the issues raised.

Commonwealth v. Campbell, No. 666-84, at 3 (Pa. Ct. Common Pleas Jan. 6, 1988).

This court does respectfully suggest that the defendant's contention of ineffectiveness as to the additional issues has not been established by the evidence.

Id. at 4.

As we read these passages, we believe that the PCHA court implicitly discredited Campbell's testimony. Borrowing from the Supreme Court's holding in LaVallee v. Delle Rose, 410 U.S. 690, 692 (1973) (per curiam), "[a]lthough it is true that the state trial court did not specifically articulate its credibility findings, it can scarcely be doubted from its written opinion that [Campbell's] factual contentions were resolved against him." Although, as Campbell properly notes, the PCHA court made one of these remarks "in passing," Campbell, No. 666-84, at 3, the PCHA court was properly passing the legal resolution of these claims--based on the factual record it created--on to the Superior Court. Miranda and other Pennsylvania case law dictated that the PCHA court do so, and, in fact, prohibited the PCHA court from reaching out to dispose of the legal questions raised in those additional claims.

Miranda held that "once the PCHA court determines petitioner has been deprived of his appellate rights, it should refrain from ruling upon the merits of the other claims and should grant petitioner the right to file an appeal nunc pro tunc." 442 A.2d at 1138. In completing the record for appellate review as to the other claims, "the PCHA court is merely acting as an evidentiary tribunal." Id. (emphasis added). Cases interpreting Miranda hold the same. In Commonwealth v. Pate, the Pennsylvania Superior Court wrote, "[O]nce a PCRA court [the equivalent of PCHA court] determines that a petitioner's right to direct appeal has been violated, the PCRA court is precluded from reaching the merits of other issues raised in the petition." 617 A.2d 754, 757 (Pa. Super. Ct. 1992) (emphasis added).

15

This limitation on the powers and duties of the PCHA court may explain its somewhat tentative written opinion, as well as validate its (inchoate) fact-finding.

Similarly, the fact that the PCHA court merely "suggest[ed]" that the evidence did not support Campbell's claims does not undermine our conclusion. Campbell, No. 666-84, at 4. If anything, it bolsters it, for in attempting to determine the character of the PCHA court's statements, we also look to the court's legal conclusions and the rational deductions that we can draw therefrom. As the Supreme Court made clear in Marshall v. Lonberger, 459 U.S. 422, 433 (1982), in determining what implicit factualfindings a state court made in reaching a conclusion, we must infer that it applied federal law correctly. Therefore, the PCHA court's suggestion to the Superior Court regarding the merits of Campbell's claims is helpful in determining what findings of fact it implicitly reached. See id.; see also Ahmad v. Redman, 782 F.2d 409, 413 (3d Cir. 1986) (applying the rule in Marshall). Put differently, our duty is to begin with the PCHA court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it.

The PCHA court repeatedly suggested that Campbell's ineffective-assistance-of-counsel claims had no legal merit. From this tentative legal conclusion one may infer that the PCHA court assumed that Campbell's trial counsel properly informed him of his right to testify. Otherwise, the legal conclusion would be invalid, because Campbell's lawyer would have deprived him of his constitutionally guaranteed right to choose whether to testify on his own behalf at trial. See Jones v. Barnes, 463 U.S. 745, 751 (1983) ("[T]he accused has the ultimate authority to make certain fundamental decisions regarding the case, [including] as to whether to . . . testify in his or her own behalf."); see also Rock v. Arkansas, 483 U.S. 44, 49-56 (1987). As Marshall, 459 U.S. at 433, teaches, we cannot assume that a state court would have so grossly misapplied our federal jurisprudence as to have reached the legal conclusion it did based on a factual finding to the contrary.

Carrying through the logic from the PCHA court's suggested legal conclusion and the implicit factual

16

conclusion that drives it, we can infer that the PCHA court credited the testimony of Campbell's trial counsel over Campbell. If the PCHA court had credited Campbell's testimony, its implicit factual finding that Campbell was notified of his right to testify would be irrational. It would mean that the PCHA court found Campbell more credible, but understood him to say the opposite of what he said.

A review of our precedent supports this mode of analysis. In McAleese v. Mazurkiewicz, 1 F.3d 159, 171-72 (3d Cir. 1993), for example--a habeas case based on a ineffective-assistance-of-counsel claim--the defendant contended that his trial counsel had failed to obtain certain long-distance phone records that would have greatly bolstered his alibi defense. At a post-conviction hearing, the defendant testified that he had told his trial counsel that such records could be obtained from the phone company and that he had asked his lawyer to obtain them. See id. at 172. His trial counsel then testified that he did not know that the telephone company kept or could have produced such records. See id. "Faced with this conflicting evidence," the state post-conviction relief court hearing this evidence failed to resolve explicitly the credibility dispute between the defendant and his trial counsel. Id. The court did, however, "decide that trial counsel had thoroughly investigated and considered all the areas about which [the defendant] complained post-verdict." Id. In reviewing the state court's legal conclusion, we held that "[i]mplicit in this conclusion is a finding that trial counsel's testimony was credible. This finding is presumptively correct and should not be disturbed by a federal court on habeas review if it is fairly supported by the record." Id. (citing, inter alia, LaVallee v. Delle Rose, 410 U.S. 690, 694-95 (1973) (per curiam)); see also Ahmad, 782 F.2d at 413 (reaching a similar conclusion on similar facts).

In sum, under the Supreme Court precedent articulated in Marshall and LaVallee, and pursuant to our cases such as McAleese and Ahmad, although the PCHA court did not make its findings of fact explicit, we are bound by its implicit resolution of the credibility dispute between Campbell and his trial counsel. The PCHA court should have made its factual findings explicit, and it would have

17

been salutary for the Superior Court to have taken the PCHA court to task for not doing so. Cf. Commonwealth v. Townsell, 379 A.2d 98, 100 n.6 (Pa. Super. Ct. 1977) (noting "with disapproval" a PCHA court's failure to make its findings of fact explicit in the post-conviction relief hearing record); see also Commonwealth v. Elliot , 466 A.2d 666, 668 (Pa. Super. Ct. 1983) (noting that "[o]n prior occasions," and in the instant appeal, the Superior Court "ha[d] remanded for findings of fact where the P.C.H.A. hearing court failed to resolve conflicts in evidence or determine issues of credibility").

At all events, we hold that the PCHA court made a sufficient determination of the factual issue on which Campbell's habeas appeal turns. AEDPA dictates that we must presumptively defer to this determination absent clear evidence to the contrary. See 28 U.S.C.S 2254(e)(1). As Campbell has introduced no such clear evidence, we further hold that ordering a new evidentiary hearing in this situation would be inappropriate. See supra Section II.A (discussing the circumstances in which a 28 U.S.C. S 2254(e)(2) evidentiary hearing is appropriate).

III. The Merits of Campbell's Substantive Habeas
        Claim in Light of the PCHA Court's Findings

In turning to the merits of Campbell's substantive habeas claim, we defer to the PCHA court's finding of fact that Campbell's trial counsel told Campbell that it was Campbell's choice whether to testify. The Superior Court hearing Campbell's nunc pro tunc appeal reviewed the evidence that the PCHA court implicitly credited--namely, that Campbell's trial counsel "absolutely" told Campbell it was Campbell's decision whether to testify, see supra note 2--and reached the legal merits of Campbell's right-to-testify/ineffective-assistance claim. It held that the legal assistance given by Campbell's counsel had not been ineffective because Campbell "made a decision not to testify after full consultation. . . . [and] it appears that counsel had a reasonable basis designed to further appellant's interests, for not calling him to testify." Commonwealth v. Campbell, No. 1010 Philadelphia 1987, at 8 (Pa. Super. Ct. Jul. 26, 1988) (citations omitted). On habeas review, 28

18

U.S.C. S 2254(d) governs our review of the state court's substantive legal conclusion.

As amended by AEDPA, 28 U.S.C. S 2254(d), provides that

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

> (1) resulted in a decision that was contrary to, o r involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. S 2254(d) (West Supp. 1999).

We address these two potential grounds for habeas relief in reverse order. At the PCHA hearing, Campbell's trial counsel testified unequivocally that he informed Campbell of his right to testify and that he assured him it was Campbell's ultimate decision, alone, whether to testify. See supra note 2. Campbell testified to the contrary. See id. A reasonable fact-finder could discount Campbell's testimony and credit his trial counsel's. Therefore, the state PCHA court did not make an unreasonable determination of the facts in light of the evidence presented when it implicitly reached that conclusion. Accordingly, habeas relief is unwarranted under 28 U.S.C. S 2254(d)(2).

We next turn our attention to 28 U.S.C. S 2254(d)(1). In reaching its legal conclusion, the Superior Court applied the federal standard regarding ineffective-assistance-of-counsel claims articulated in Strickland v. Washington, 466 U.S. 668, 687-96 (1984). Based on the facts presented it concluded that Campbell's trial counsel did not render ineffective assistance. The Court reasoned, appropriately, that Campbell's trial counsel did not render ineffective

19

assistance by warning him that if he were to take the witness stand and recant his remorse-filled confession, he would likely alienate the jury. If anything, this was sound advice. The factual record to which we must defer demonstrates that this advice went no further than counseling, and that trial counsel did not suggest to Campbell that he could not testify, even if he chose to do so.

On these facts, the Superior Court applied federal law in a reasonable manner in concluding that Campbell's trial counsel did not render ineffective assistance under the "objective reasonableness" standard articulated by the Supreme Court in Strickland. See, e.g. , United States v. Teague, 953 F.2d 1525, 1534-35 (11th Cir. 1992) (holding that counsel's performance was not constitutionally deficient, in case in which defendant was advised of his right to testify, but was advised that he should not exercise that right because it would be unwise and unnecessary). As this decision was not "contrary to . . . clearly established Federal law," or an "unreasonable application of " such law, 28 U.S.C. S 2254(d)(1), habeas relief underS 2254(d)(1) is unwarranted, see Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 888-91 (3d Cir. 1999) (en banc) (establishing the analytical framework, under AEDPA, for reviewing the legal conclusions reached by state courts based on federal law). The District Court's order denying habeas relief will therefore be affirmed.

        BY THE COURT:

         /s/ Edward R. Becker
        _____
        Chief Judge

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit