

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-16-2005

# Buda v. Stickman

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2655

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Buda v. Stickman" (2005). *2005 Decisions.* Paper 540.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/540

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No:  04-2655

EDWARD A. BUDA

Petitioner

v.

WILLIAM S. STICKMAN, III;
DISTRICT ATTORNEY OF WAYNE COUNT;
ATTORNEY GENERAL OF PENNSYLVANIA

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No.: 03-CV-00878
District Judge: The Honorable Christopher C. Conner

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 15, 2005

Before: SLOVITER, BARRY, and SMITH, *Circuit Judges*

(Filed: September 16, 2005)

OPINION

SMITH, *Circuit Judge*.

Allegedly at the recommendation of counsel, Edward A. Buda pleaded guilty to

1

first degree murder in Pennsylvania in 1989 to avoid the death penalty. He sought and was denied a post-conviction evidentiary hearing in state court on whether his counsel rendered ineffective assistance in violation of the Sixth Amendment. In a habeas petition in the District Court, Buda again sought an evidentiary hearing to uncover facts related to his counsel's allegedly ineffective assistance but that request was denied on the ground that he had not pursued his evidentiary hearing in Pennsylvania with sufficient diligence. Having reviewed Buda's state court papers in light of the controlling statute and cases, we will vacate the judgment of the District Court and remand for an evidentiary hearing.

## I.

In 1996, a man unknowingly walked into the burglary of his house in Wayne County, Pennsylvania and was shot to death by the intruder(s). Nearly a year later, Buda and three others were charged with, inter alia, criminal homicide. The County District Attorney filed notices of aggravating circumstances against three of the men as a predicate to seeking the death penalty. Buda was one of those men; the other two were Michael Wilson and David Mandeville. Wilson pleaded guilty to first degree murder and was sentenced to life in prison plus 40 to 80 years. Mandeville went to trial, where he was found guilty of murder and sentenced to life in prison plus 8 to 18 years. The fourth confederate, Daniel Quarles, pleaded guilty to third degree murder, robbery and burglary and was sentenced to 18 to 36 years in prison. According to Buda, after Wilson and Quarles were sentenced, Buda pleaded guilty to first degree murder on the advice of

counsel.  In exchange for Buda's plea, the Commonwealth dropped all other charges and promised not to seek the death penalty.  In January 1998, Buda was sentenced to life in prison.

Buda did not directly appeal his sentence, but in November 1998 he filed a pro se petition for relief in the Wayne County Court of Common Pleas under the Commonwealth's Post-Conviction Relief Act (PCRA).  In the petition, Buda claimed that he was denied effective assistance of counsel leading up to his plea because his attorney "goaded [sic] [him] of his right to trial by jury, in that counsel failed to advise [him] of the mitigating factors in [his] behalf regarding a sentence of death."  Buda also claimed that his counsel "failed to object to the degree of guilt, in that the trial court lacked a factual basis in accepting a guilty plea of first-degree murder," and he sought discovery of "all investigative reports gathered in this case, and court transcripts of the same . . . ."

In August 2000, while Buda's PCRA petition was pending, he wrote to his sentencing judge to request transcripts of his guilty plea hearing.  In that letter, Buda claimed that his lawyer leading up to sentencing was

> very coercive in having me believe I would receive no lesser sentence than the death penalty, even though now I realize I should have never been tried for a capital case since there is factual evidence of an independent cause for my co-defendant to want [the victim] dead, that I was under duress, [and] that I was heavily intoxicated . . . .

Buda also claimed that he asked his present, court-appointed lawyer to secure the transcripts for him but that she had not done so.  That attorney moved to withdraw her

3

representation of Buda in January 2001 on the ground that his post-conviction claims were without merit, and that she could identify no other claims available to him.

In February 2001, the Court of Common Pleas noticed its intention to dismiss Buda's PCRA claim and granted Buda's counsel leave to withdraw. The Court ruled that Buda's trial counsel could not have been ineffective in failing to advise him of mitigating factors regarding a death sentence because Buda was not sentenced to death. Further, the Court rejected Buda's argument that his counsel "lacked a factual basis in accepting a guilty plea of first degree murder" because, by pleading guilty, Buda waived all issues "relating to the sufficiency of the evidence." The Court did not directly address Buda's request for further discovery, but concluded that "[n]o purpose would be served by any further proceedings."

Just over two weeks later, Buda filed a pro se response to the Court's notice in which he asserted ineffective assistance of his *post-conviction* counsel in failing to assert that Buda was denied effective assistance of trial counsel. Buda asked for an evidentiary hearing. In August 2001, the Court of Common Pleas denied Buda's motion for post-conviction relief and again concluded that "no purpose would be served by any further proceedings." Buda appealed to the Superior Court, which in August 2002 rejected Buda's claim that his post-conviction counsel was ineffective and his original claim that his trial counsel had been ineffective, and adopted the Common Pleas Court's reasoning as its own. In December 2002, the Pennsylvania Supreme Court denied Buda's petition

4

for allowance of appeal.

In January 2003, Buda filed a petition for a writ of habeas corpus in the U.S. District Court for the Eastern District of Pennsylvania, a petition later transferred to the Middle District of Pennsylvania. In that petition, Buda asked for a hearing to determine whether he had been denied his Sixth Amendment rights because his counsel advised him to plead guilty to first degree murder. A magistrate judge ordered a show cause hearing to be held on Buda's petition in October 2003, but canceled the hearing upon a motion by the District Attorney.

In March 2004, the Magistrate Judge filed a Report and Recommendation (R&R) advising that Buda's petition be denied. According to the Magistrate Judge, Buda's essential argument for an evidentiary hearing was that Buda "received bad advice from trial counsel about possible defenses, the likelihood of the death penalty and the degree of murder that was appropriate under the facts and law[,] and that this bad advice caused him to plead guilty to murder in the first degree rather than go to trial." The respondents argued that Buda failed to develop the factual basis for this claim in state court as required by 28 U.S.C. § 2254(e)(2). The Magistrate Judge agreed, concluding that Buda's "bare" request for a hearing did not amount to the diligence required by § 2254(e)(2) as interpreted by the Supreme Court in *Williams v. Taylor*, 529 U.S. 420, 437 (2000). On March 14, 2004, the District Court adopted the R&R and denied Buda's petition for habeas corpus. This Court granted a certificate of appealability to Buda on

5

November 24, 2004 on whether the District Court erred by denying Buda's petition on the merits "without conducting an evidentiary hearing on [his] claim that his guilty plea is invalid based on the ineffective assistance of trial counsel in advising him to plead guilty to first-degree murder."[1]

## II.

A state prisoner who in a federal habeas petition requests an evidentiary hearing on claims he was unable to develop in state court must surmount the statutory barrier erected in 28 U.S.C. § 2254(e)(2) (2005). *Williams*, 529 U.S. at 424. That provision, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides that "[i]f the [petitioner] has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim," unless certain conditions are met. 28 U.S.C. § 2254(e)(2). Buda does not claim to have met those conditions, and therefore we must determine whether he "failed to develop the factual basis" of his claim in his state court proceedings. *Id*.

We conduct a two-part inquiry to determine whether Buda failed to develop the factual basis of his claim. "We ask first whether the factual basis was indeed developed in state court, a question susceptible, in the normal course, of a simple yes or no answer." *Cristin v. Brennan*, 281 F.3d 404, 415 (3d Cir. 2002) (quoting *Williams*, 529 U.S. at 431). Here, the parties agree that the answer is no. Next, we consider whether the record was

---

[1]The District Court exercised jurisdiction under 28 U.S.C. § 2254; we have jurisdiction under 28 U.S.C. § 2253.

inadequately developed because of a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id*. (quoting *Williams*, 529 U.S. at 432). Diligence requires a prisoner to make a "reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court . . . ." *Williams*, 529 U.S. at 451. Typically, this means that the prisoner must at least request an evidentiary hearing in state court as required by state law. *Id*. at 435.

Respondents do not argue that Buda failed to seek an evidentiary hearing in the manner prescribed by state law, yet claim that he nevertheless did not make a reasonable attempt to investigate and pursue his claims in state court. We cannot square this position with *Williams*'s express instruction or its example.[2]

The *Williams* Court declared that "[d]iligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." 529 U.S. at 437. As respondents do not dispute that Buda did so, it is difficult to avoid the conclusion that the District Court raised a barrier for Buda

---

[2]The parties dispute the appropriate standard of review for district court determinations regarding a petitioner's diligence in seeking an evidentiary hearing in state court. Buda notes that in *Marshall v. Hendricks*, 307 F.3d 36 (3d Cir. 2002), we exercised plenary review over a district court's decision on whether to grant habeas corpus relief where the district court did not hold an evidentiary hearing. *Id*. at 50. There, however, the petitioner's diligence in seeking a state court hearing was not at issue as a hearing in state court had been held, and the district court relied on that hearing instead of holding its own. *Id*. Respondents counter that we should follow the Eleventh Circuit, which has "squarely held that a determination regarding a party's diligence is a finding of fact that will not be disturbed unless clearly erroneous." *Hall v. Head*, 310 F.3d 683, 697 (11th Cir. 2002) (citing *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1283 (11th Cir. 2002)). We need not settle this dispute as we conclude that the District Court's decision was error under both standards.

higher than that established in *Williams*. This becomes doubly apparent in light of *Williams'* contrasting facts. There, the petitioner claimed in his federal habeas petition that the prosecution had failed to disclose a pre-trial psychiatric evaluation of the petitioner that concluded that the petitioner was intoxicated while committing his alleged murders. *Id*. at 427. The Supreme Court held that because the report was prepared before trial and repeatedly was mentioned in the transcript of the petitioner's sentencing proceeding, the petitioner lacked any excuse for not arguing in his state post-conviction proceedings that non-disclosure violated his rights. *Id*. at 439. Conversely, here, Buda expressly raised to the Court of Common Pleas his ineffective assistance of counsel argument and requested a hearing. He also wrote to his sentencing judge and requested a transcript of his guilty plea hearing and outlined the reasons supporting his theory that his counsel had acted ineffectively. The Court got the message: It expressly acknowledged his request for a hearing, rejected his ineffective assistance claim on the merits, and stated that "no purpose would be served by any further proceedings." The Superior Court adopted this reasoning.

What more could Buda reasonably have done? "For state courts to have their rightful opportunity to adjudicate federal rights, the prisoner must be diligent in developing the record and presenting, if possible, all claims of constitutional error." *Williams*, 529 U.S. at 437. We conclude that the Pennsylvania courts had their "rightful opportunity" to adjudicate Buda's federal rights as evidenced by their square rejection of

8

his claims of constitutional error under the Sixth Amendment, and their refusal to hold an evidentiary hearing. It is therefore no fault of Buda's that the facts of his ineffectiveness of counsel claim are undeveloped.

Of course, a petitioner who diligently but unsuccessfully seeks an evidentiary hearing in state court is not thereby *entitled* to an evidentiary hearing in federal court under AEDPA. *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000). Whether to hold a hearing remains in the discretion of the district court, and depends on whether the hearing would "have the potential to advance the petitioner's claim." *Id*. Where a petitioner fails to forecast to the district court evidence outside the record that would help his cause or "otherwise to explain how his claim would be advanced by an evidentiary hearing," a court is within its discretion to deny the claim. *Id*.

Buda clearly explained to the district court how his claim would be advanced by an evidentiary hearing. In his pro se Memorandum of Fact and Law to the District Court, Buda described in organized fashion the facts of his case, its procedural history, and the nature of his claims. He explained that in the Court of Common Pleas he had requested an evidentiary hearing to establish:

> (i) That on April 10, 1997, Pennsylvania State Police took a signed confession/statement from Petitioner;
> (ii) That both confessions/statements provide evidence exonerating Petitioner of malice, and/or imputed malice in the subject murder;
> (iii) That counsel was provided with the said confessions evidence in pretrial discovery;
> (iv) That trial counsel recognized Petitioner's innocence in

9

> relation to the murder, via said evidence;
> (v) That the government failed to provide valid aggravated factors for seeking the death penalty . . . .

App. at 300-01. By denying him the opportunity to put on this evidence, Buda argued, he was prevented from proving that his trial counsel provided ineffective assistance.

As with the question whether Buda diligently sought a hearing in state court, we are puzzled as to what more the District Court could have asked from Buda. He was called upon under *Williams* to forecast or explain the utility of an evidentiary hearing, and he did so. Had he successfully shown that trial counsel recognized the factors militating against Buda's conviction of first degree murder (i.e., that the victim may have been dead when Buda shot him, that Buda acted under duress and was intoxicated at the time of the murder) that certainly would have helped advance Buda's claim that counsel's performance was deficient in advising Buda to plead guilty to avoid the death penalty. *See Campbell*, 209 F.3d at 287. The District Court understood this. The Court explained Buda's theory in "distill[ed]" form: "that [he] received bad advice from trial counsel about possible defenses, the likelihood of the death penalty and the degree of murder that was appropriate under the facts and law and that this bad advice caused him to plead guilty to murder in the first degree rather than go to trial." In turn, the District Court noted, Buda requested time for discovery and thereafter an evidentiary hearing. In the face of Buda's crystalline forecast of what evidence he hoped to adduce at the hearing and his sharp enunciation of the help that showing would be to his claim for relief, it was

10

an abuse of discretion for the District Court not to grant Buda an evidentiary hearing.

**III.**

For the foregoing reasons, we will vacate the judgment of the District Court and remand this petition to the District Court for an evidentiary hearing.

11