

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-11-2008

# Buda v. Stickman

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2086

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Buda v. Stickman" (2008). *2008 Decisions.* Paper 545.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/545

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2086
_____

EDWARD A. BUDA,

Appellant,

v.

WILLIAM S. STICKMAN, III; DISTRICT ATTORNEY OF WAYNE COUNTY;
ATTORNEY GENERAL OF PENNSYLVANIA,

Appellees.

_____

On Appeal from an Order of the United States District Court
for the Middle District of Pennsylvania
(Civ. No. 03-cv-00878)
District Judge: Honorable Christopher C. Conner
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 25, 2008

Before: MCKEE, FUENTES, and Weis, Jr., Circuit Judges.

(Opinion Filed: September 11, 2008 )

_____

OPINION OF THE COURT

_____

-1-

FUENTES, Circuit Judge.

On August 11, 1996, Edward Buda, along with two co-defendants, Michael Wilson and David Mandeville, broke into the home of Charles Gregg with the purpose of stealing guns and other property. When Gregg entered his house during the burglary, Buda and one of his co-defendants duct taped Gregg's hands, feet, and face, and then all three perpetrators shot Gregg, causing his death. Nearly a year later, Buda was arrested, pled guilty to first degree murder, and received a mandatory sentence of life imprisonment. Following an unsuccessful petition for relief under Pennsylvania's Post Conviction Relief Act, Buda filed for federal habeas relief under 28 U.S.C. § 2254, alleging that his plea counsel, Jeffrey Wander, was ineffective by overemphasizing the likelihood that Buda would receive the death penalty following a trial. After an evidentiary hearing before a magistrate judge, the District Court denied the petition, concluding that Wander's performance did not fall below an objective standard of reasonableness. We will affirm.[1]

We provided an extensive review of the facts and procedural history in a previous opinion. See Buda v. Stickman, 149 Fed.Appx. 86 (3d Cir. 2005) (Buda I) (vacating the District Court's denial of Buda's petition for a writ of habeas corpus and remanding for

---

[1]The District Court had subject matter jurisdiction under 28 U.S.C. § 2254. We construe Buda's timely filed notice of appeal as a request for a certificate of appealability. See Mickens-Thomas v. Vaughn, 355 F.3d 294, 303 (3d Cir. 2004). We have appellate jurisdiction under 28 U.S.C. § 1291 and § 2253.

an evidentiary hearing). We will not recount them here.

Because this case is brought under 28 U.S.C. § 2254, this Court's scope of review is extremely deferential to the state court's findings of fact and determinations of law. Taylor v. Horn, 504 F.3d 416, 428 (3d Cir. 2007) ("AEDPA requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations on the merits."). Section 2254(d) limits habeas review of state court judgments to cases that fall within two exceptions to the general rule of abstention: cases in which the state court's proceeding

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In order for a reviewing federal court to find a state court's application of Supreme Court precedent "unreasonable," that application must be "more than incorrect or erroneous"; it must have been "objectively unreasonable." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (citation omitted); see also Taylor, 504 F.3d at 428-29.

In this case, the relevant clearly established Supreme Court law is Strickland v. Washington, 466 U.S. 668 (1984), and its progeny, which articulated the standard for constitutionally inadequate assistance of counsel. Under Strickland, to succeed on a claim of ineffective assistance of counsel, Buda "must show that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." Strickland,

-3-

466 U.S. at 687. To show deficiency, Buda must show that his attorney's performance "fell below an objective standard of reasonableness." Id. at 688. The Supreme Court continued:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel's was unreasonable. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Id. at 689 (internal quotation marks omitted). If an attorney's actions are the result of "strategic choices made after thorough investigation of law and facts relevant to plausible options," the presumption of reasonableness is essentially irrebuttable. Id. at 690. However, even if an attorney's strategic choice is made "after less than complete investigation," those choices are still considered "reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. . . . In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. at 690-91.

Buda's counsel, Wander, believed that there was a high probability that a jury would impose the death penalty should Buda go to trial. Therefore, in the days leading to trial, Wander wrote Buda a letter recommending that he accept life imprisonment, rather

than risk the death penalty following a trial:

> Please be advised that I believe I have had the opportunity to make an ample investigation into the facts, circumstances and charges presently facing you . . . . It is my professional opinion that the chances of you leaving the courtroom after your trial with anything less than a life sentence are unlikely. . . . Obviously, a conviction on First Degree Murder will allow the jury to consider whether or not to impose the death penalty. There are more aggravating factors than mitigating factors and, although the number of each of these facts is not the deciding factor, you must be aware that the Commonwealth has more on its side than we have on our side.

> Therefore, as I stated to you yesterday, if you are seeking to avoid the death penalty, which I hope you would, and you know that you can leave the courtroom with a life sentence, I would suggest that you strongly consider taking that route. . . . Although you are the one who must do the time, I would hope that you would consider the feelings of your mother, grandmother and other individuals who would suffer extreme mental duress if the death penalty were imposed on you. Although you may have done things in your life that have caused it not to turn out the way you wish, I would hope that you would not do anything to other people if you have a chance to at least let them know you, love you and visit you over the coming years.

App. 476-77. Buda now contends that this advice was the result of an inadequate investigation regarding potential defenses and mitigating circumstances that would have rendered the death penalty unlikely. In particular, Buda contends that because he shot Gregg after his two co-defendants, a jury could have concluded that Gregg was already dead when Buda pulled the trigger; because one of Buda's co-defendants forced Buda to fire by threatening his life, the defense of duress was available; and because Buda was voluntarily intoxicated at the time of the crime, he did not have the specific intent to kill necessary to receive the death penalty.

The record following the evidentiary hearing shows that Wander did in fact consider each of these arguments. Regarding the argument that Gregg was dead at the time of the shooting, Wander argued in an Omnibus motion that Buda could not have committed first degree murder because the victim was already dead when Buda shot him. After this motion was denied, Wander decided that this argument was weak, because, among other things, Buda himself admitted that he was the second person to shoot, not the third; Buda admitted that he had no basis for knowing whether Gregg was dead or alive when he fired; and Buda's co-defendant Michael Wilson was an unreliable witness because of his varying accounts of the crime.

Next, Wander researched the defense of duress, but concluded that it was unhelpful because Buda had placed himself in a situation where duress was likely. See 18 Pa. C.S.A. § 309(b) (stating that duress is "unavailable if the actor recklessly placed himself in a situation in which it was probable that he would be subjected to duress"). Finally, Wander was aware that Buda smoked marijuana with his co-defendants prior to the burglary and homicide, but did not think Buda was sufficiently intoxicated to rebut specific intent. Indeed, Buda's testimony reflects a detailed recollection of the crime perpetrated.

Wander also considered the community sentiments regarding the Gregg murder and concluded that a local jury would not hesitate to impose the death penalty. In addition, Wander considered that a felony-murder conviction would carry a sentence of

-6-

life imprisonment, if not death, which rendered the risk of a jury-imposed death penalty following conviction unnecessarily high. After Buda's plea offer of second degree murder was rejected by the district attorney, who indicated his intent to seek the death penalty, Wander recommended that Buda enter a guilty plea for first degree murder with no death penalty. Buda completed a seven-page, written plea colloquy in which he acknowledged a full understanding of the plea agreement and the rights he was foregoing by pleading guilty, and indicated that he was exercising his free will in entering the guilty plea. He also indicated that he was satisfied with the representation he had received from Wander.

In our view, Buda has failed to show that Wander's investigation, trial preparation, and counseling fell below "the wide range of professionally competent assistance" under the circumstances, or that the investigative demands now being made would have resulted in any useful information not already known to Wander. Strickland, 466 U.S. at 690. Therefore, we need not address the prejudice prong of Strickland, and we will affirm the District Court's denial of the petition for a writ of habeas corpus.