Hensel Omar PENA, Petitioner,

v.

George J. GIURBINO, Warden, et al., Respondents.

No. 01CV1069 JAH(BEN).

United States District Court, S.D. California.

March 22, 2004.

Hensel Omar Pena, Imperial, CA, Pro se.

Garry A Preneta, Law Office of Garry A Preneta, San Francisco, CA, for Hensel Omar Pena, petitioner.

Attorney General, State of California, Office of the Attorney General, San Diego, for George Giurbino, Warden, Attorney General of the State of California, respondents.

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DENYING PETITION FOR WRIT OF HABEAS CORPUS

HOUSTON, District Judge.

### INTRODUCTION

Petitioner, a state prisoner appearing through counsel, Garry A. Preneta, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter has been fully briefed on the merits. Pursuant to 28 U.S.C. § 636(b)(1), the Honorable Roger T. Benitez, United States Magistrate Judge, submitted a report and recommendation ("Report") to this Court recommending that petitioner's petition for writ of habeas corpus be denied. Petitioner filed objections to the Report. Respondents did not file a reply to the objections. Having fully reviewed the matter, and for the reasons set forth below, this Court **ADOPTS** the Magistrate Judge's Report and **DENIES** the instant petition in its entirety.

### BACKGROUND

On October 20, 1989, a gang related shooting occurred resulting in the death of David Traylor and a gunshot wound to Jess Guerra. Petitioner was implicated in the shooting along with two other persons, William Gonzalez and Raul Leyva. After being questioned, petitioner was released by the arresting authorities and fled to Mexico.

Petitioner was arrested in August 1995 while visiting his mother in San Diego. Prior to his arrest, judicial proceedings were conducted in the Republic of Mexico at the request of the San Diego County District Attorney ("District Attorney") relating to the October 20, 1989 shooting. Petitioner filed an *amparo* petition challenging the arrest warrant issued for his arrest. The Mexican judge found deficiencies in the evidence submitted in support of the warrant and granted the petition, dismissing the charges. The decision was not appealed.

After petitioner's arrest in San Diego, petitioner challenged the San Diego court's jurisdiction, contending his prosecution was barred by the *amparo* proceedings. At a hearing held in juvenile court, evidence was presented regarding the meaning of an *amparo* proceeding. Three expert witnesses and an interpreter testified. The juvenile court concluded that the *amparo* proceedings did not result in an adjudication on the merits and denied petitioner's motion to dismiss. The case was subsequently transferred to superior court for trial as an adult.

Petitioner renewed his dismissal motion in San Diego County Superior Court, submitting a declaration from a Mexican attorney and international law consultant, Jorge Mario Magallan Ibarra, as to the effect of the *amparo* proceedings. The Superior Court denied the motion.

Petitioner was subsequently tried by jury and convicted of second-degree murder and attempted murder, each with an enhancement for being personally armed

with a hand gun. Petitioner was also convicted of assault with a firearm. Petitioner was sentenced to a term of fifteen years to life for the second-degree murder and nine years for the attempted murder.

Petitioner appealed his conviction to the California Court of Appeal. The conviction was affirmed in an unpublished opinion filed on September 23, 1999. Petitioner filed a petition for rehearing before the California Court of Appeal, which was denied on October 25, 1999.

On November 3, 1999, petitioner filed a petition for review before the California Supreme Court, which was denied on January 19, 2000. Petitioner then filed a petition for writ of certiorari before the United States Supreme Court, which was denied on June 19, 2000. On June 8, 2001, petitioner filed a petition for writ of habeas corpus before the San Diego Superior Court. That petition was denied on July 16, 2001. Petitioner subsequently filed a petition for writ of habeas corpus before the California Court of Appeal, which was denied on December 13, 2001. Petitioner last habeas petition before the California courts, filed before the California Supreme Court, was denied on August 14, 2002.

The instant petition was filed on June 14, 2001, along with a motion for an order staying the petition while petitioner sought relief before the California courts. The Honorable Barry Ted Moskowitz, District Judge, granted petitioner's stay request on October 24, 2001, directing petitioner to file an amended petition by April 12, 2002. The filing deadline was later extended until December 6, 2002. Petitioner filed his amended petition on December 5, 2002. Respondents filed their answer on May 21, 2003 and petitioner filed his traverse on July 8, 2003.

Magistrate Judge Benitez submitted a Report and Recommendation on September 5, 2003. Petitioner filed his objections to the Report on October 16, 2003. Respondents did not file a reply to petitioner's objections. On October 23, 2003, the matter was transferred to this Court. On November 7, 2003, this Court took the matter under submission without oral argument.

## DISCUSSION

### 1. Standard of Review

■ The district court's role in reviewing a Magistrate Judge's report and recommendation is set forth in 28 U.S.C. § 636(b)(1). Under this statute, the district court "shall make a *de novo* determination of those portions of the report ... to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." *Id.* When no objections are filed, the Court may assume the correctness of the magistrate judge's findings of fact and decide the motion on the applicable law. *Campbell v. United States Dist. Court,* 501 F.2d 196, 206 (9th Cir.1974); *Johnson v. Nelson,* 142 F.Supp.2d 1215, 1217 (S.D.Cal. 2001). Under such circumstances, the Ninth Circuit has held that "a failure to file objections only relieves the trial court of its burden to give *de novo* review to factual findings; conclusions of law must still be reviewed *de novo.*" *Barilla v. Ervin,* 886 F.2d 1514, 1518 (9th Cir.1989) (citing *Britt v. Simi Valley Unified Sch. Dist.,* 708 F.2d 452, 454 (9th Cir.1983)).

### 2. Analysis

The instant petition contains four claims for relief: (1) that petitioner is in custody in violation of the double jeopardy provision contained in the extradition treaty between the United States and Mexico ("Extradition Treaty"); (2) that due process was violated by denial of petitioner's post-trial request for juror information; (3) that petitioner is in custody in violation

of the Double Jeopardy Clause of the United States Constitution; and (4) that equitable estoppel principles bar petitioner's prosecution in San Diego. The Report found all four claims were without merit, recommending that the instant petition be denied in its entirety.

Petitioner only objects to the Report's conclusions regarding claim one: violation of the double jeopardy provision contained in the Extradition Treaty. No objections as to claims two three and four having been filed, this Court assumes the correctness of the magistrate judge's findings of fact as to those claims. *See Campbell,* 501 F.2d at 206; *Johnson,* 142 F.Supp.2d at 1217. In regards to the magistrate judge's conclusions of law regarding claims two, three and four, this Court thoroughly reviewed the record and finds that the magistrate judge presented a cogent analysis of the issues presented. Therefore, this Court ADOPTS the magistrate judge's findings of fact and conclusions of law on claims two, three and four.

As to claim one, the magistrate judge found that the Extradition Treaty was not applicable to petitioner because the District Attorney did not request extradition of petitioner. *See* Report at 10. In addition, the magistrate judge found that the state court's resolution of conflicting testimony of witnesses regarding the effect of the *amparo* proceedings was not objectively unreasonable. *Id.* The magistrate judge also noted that the Mexican judge applied United States and California law in deciding petitioner's double jeopardy claim, as opposed to Mexican law which would have been the applicable law under the Extradition Treaty. *Id.*

As an initial matter, petitioner points out that, based upon the lack of clearly established United States Supreme Court law, this case must be governed by the criteria contained in 28 U.S.C. § 2254(d)(2) as opposed to section 2254(d)(1) as pre-

sented in the Report. 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This Court disagrees with petitioner's assessment. A review of the petition reveals that petitioner sought relief under both (d)(1) and (d)(2). Therefore, this Court will address each applicable section as required here and will not narrow the decision to analysis under (d)(2) alone as suggested by petitioner.

Petitioner objects to the magistrate judge's findings and conclusions on three grounds: (A) that the magistrate judge misunderstood petitioner's argument by indicating petitioner claimed the issue of the applicability of the Extradition Treaty was never addressed by the state court; (B) that the magistrate judge's conclusion that the Extradition Treaty was not implicated by the *amparo* proceedings was in error; and (C) that the magistrate judge's application of deference to the state court's decision regarding the effect of the *amparo* proceedings was unreasonable.

## A. Interpretation of Petitioner's Argument

Petitioner first objects to the magistrate judge's interpretation of petitioner's argument regarding the applicability of the

treaty. Petitioner contends that, in his petition, he argued the Treaty took effect upon the initial request by the District Attorney before the *amparo* proceedings began. According to petitioner, the magistrate judge misinterpreted his argument as a due process claim based on the fact that the issue was never addressed by the trial court. *See* Obj. at 2; Report at 9. This Court disagrees with petitioner's view of the magistrate judge's discussion. The magistrate judge clearly discusses the due process issue as "an initial matter," and not as an analysis of petitioner's claim regarding the applicability of the Treaty. After discussion of the "initial matter," the magistrate judge clearly outlines petitioner's arguments regarding whether the Treaty applies, indicating that the arguments listed were the substantive issues to be discussed. This Court finds the magistrate judge did not misunderstand petitioner's argument. Therefore, petitioner's first objection is OVERRULED.

## B. Implication of the Extradition Treaty

Petitioner next objects to the magistrate judge's inference that an express extradition request was required to implicate the Extradition Treaty and that no request was made by the District Attorney. *See* Obj. at 2–3. The magistrate judge rejected petitioner's argument that "the mere failure to extradite" triggers application of the Extradition Treaty. Report at 10. Petitioner contends that the District Attorney's actions in providing documentation regarding petitioner's prosecution to authorities in Mexico "constituted a *de facto* request to extradite" thus implicating the Extradition Treaty. Obj. at 2–3. Petitioner points out that, if no *de facto* extradition was requested, the actions by the District Attorney amounted to a violation of the United States Constitution because such actions between a state and a foreign government are prohibited absent the applica-

tion of a treaty. *Id.* (citing U.S. Const., Art.1 § 10, ¶ 3). Notwithstanding this alleged violation, petitioner contends that the terms of the Extradition Treaty were actually triggered here, pointing to the requirement under the Extradition Treaty that, when there is a failure to extradite, "the requested party shall submit the case to its competent authorities for the purpose of prosecution …" Obj. at 3; *see* Extradition Treaty Between the United States of America and the United Mexican States, May 4, 1978, U.S.-Mex., Art. 9.2, 31 U.S.T. 5059. Petitioner claims that action occurred here through the *amparo* proceedings, providing proof that the prosecution requested a *de facto* extradition. *Id.*

The California Court of Appeal addressed petitioner's arguments, finding the evidence presented contradicts petitioner's position. Lodgment 6 at 12. The Court of Appeal noted that there was no express request for extradition by the District Attorney and that petitioner's presence in San Diego was not due to an extradition but to his voluntary return to the United States. *Id.*

The Court of Appeal specifically found that:

> The Mexican prosecution was not pursuant to a request for extradition followed by a decision by Mexican authorities refusing to extradite and a decision to prosecute [petitioner] in Mexico. The Mexican prosecution was prompted by a request from the San Diego County District Attorney pursuant to 'Section IV of the Federal Penal Code of the Mexican Republic,' which permits a prosecution in Mexico for '[i]njuries and [h]omicide committed outside Mexico.'

*Id.; see* Art. 4 del Codgio Penal de Mexico de 1931.

Petitioner contends that there does not appear to be any other explanation other than to construe the District Attorney's

actions as seeking prosecution through the Extradition Treaty's provisions after a *de facto* extradition request was denied by Mexican authorities, triggering Article 9.2 of the Extradition Treaty. Obj. at 2–3. The state court did not accept petitioner's construction and found the District Attorney's actions are more appropriately construed as a request to have Mexican authorities decide whether to prosecute petitioner in Mexico under Article 4 of the Mexican Penal Code.[1] *See* Lodgment 6 at 12.

■ Petitioner claims that the United States Constitution prohibits the District Attorney's action, if construed as outside a federal treaty. *Id.* at 3 (citing U.S. Const., Art. 1 § 10 ¶ 3). Contrary to petitioner's assertion, the District Attorney's actions were not in violation of the laws or Constitution of the United States. The Treaty on Cooperation Between the United Mexican States and The United States of America for Mutual Legal Assistance ("MLAT") allows Mexican and United States law enforcement to provide mutual legal assistance in criminal matters arising in the requesting party's jurisdiction. *See* Treaty on Cooperation Between the United Mexican States and The United States of America, December 9, 1987 *entered into force* May 3, 1991, U.S.-Mex., Michael Abell, *Obtaining Evidence Abroad in Criminal Cases,* A–205–212 (2002). Thus, the actions of the District Attorney, if not construed as pursuant to the Extradition Treaty, were not in violation of the United States Constitution, as petitioner suggests.

Additionally, because there was no express extradition request and the District Attorney's actions appear to be consistent with a sharing of investigative information with Mexican authorities pursuant to the MLAT in order to allow Mexican authorities to decide whether to prosecute petitioner under the Mexican Federal Penal Code, this Court finds that the Extradition Treaty was not triggered by the District Attorney's actions. Thus, this Court finds that the Court of Appeal's decision provided a reasonable interpretation of the actions undertaken by the District Attorney. Therefore, this Court finds that the Court of Appeal's decision as to this issue was not contrary to, nor an unreasonable application of clearly established United States Supreme Court law, nor was the decision an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1), (d)(2). Accordingly, petitioner's objections to the magistrate judge's report as to the implication of the Extradition Treaty are OVERRULED.

### 3. Effect of *Amparo* Proceedings

Petitioner's final objection to the magistrate judge's report regards the determination as to the legal effect of the *amparo* proceedings. Petitioner contends that there was an "overwhelming" amount of "reasoned expert opinion" presented to the state courts in support of petitioner's claim but the state courts relied upon the expert opinion of a Mexican attorney instead who provided a contrary opinion containing "a conclusory statement with little, if any, supporting legal reasoning behind it." Obj. at 4. Petitioner concedes that the federal court is required to afford the state courts' opinion great deference but insists

---

1. The District Attorney did not provide the Mexican authorities with information to assist in their decision as to whether to extradite petitioner to the United States but, instead, provided "police reports, witness statements and the warrant for [petitioner's] arrest" to aid the Mexican authorities in deciding whether to prosecute petitioner in Mexico. Lodgment 6 at 4. Based on this construction, this Court can infer that the state court may have given weight to the prosecutor's representation that the District Attorney "did ask the Republic of Mexico to prosecute the minor." Lodgment 2, Vol. I at 7.

that such deference "is not limitless," especially where the finding has "no or little rationale." *Id.*

 The magistrate judge pointed out that the juvenile court, having been presented with the bulk of the testimony presented as evidence on this issue, heard conflicting testimony. Report at 11. The magistrate judge found, therefore, that "the state court's adoption of one expert's testimony over the other" cannot be considered objectively unreasonable. *Id.* (citing *Campbell v. Vaughn*, 209 F.3d 280, 291 (3rd Cir.2000)(refusing to grant relief under 28 U.S.C. § 2254 in light of conflicting testimony)). This Court agrees with the magistrate judge. As petitioner recognizes, under 28 U.S.C. § 2254(e)(1), federal courts must "give great deference to the state court's factual findings." *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir.1997) (en banc). As amended, § 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*

Although petitioner points out that there were more expert opinions finding in favor of petitioner's position than to the contrary, the state court reviewed those opinions and made a credibility determination as to the weight to be given those opinions. Petitioner's objections fall short of meeting the burden of rebutting the presumption of correctness by clear and convincing evidence. Petitioner has presented nothing to rebut that credibility determination other than his own statements that the weight of the evidence was not properly applied. Accordingly, this Court finds that the magistrate judge's deference to the state court's findings as to this issue was correctly placed. Therefore, petitioner's ob-

jections regarding the effect of the *amparo* proceedings is OVERRULED.

### *CONCLUSION AND ORDER*

Based upon the foregoing, **IT IS HEREBY ORDERED** that:

1. Petitioner's objections to the Magistrate Judge's Report are **OVERRULED**.

2. The findings and conclusions of the Magistrate Judge presented in the Report are **ADOPTED** in their entirety;

3. The instant petition for writ of habeas corpus is **DENIED** in its entirety; and

4. The Clerk of the Court is directed to enter judgment in accordance with this Order.