## SYMONS ET AL. *v*. RICE.

*Office and officer — De jure and de facto — Injunction by incumbent — Proceedings in contempt — Collateral attack — Title and constitutionality of office — Defendant compelled to testify — Not prejudicial error, when.*

1. One who is in possession of an office, whether as an officer *de jure* or an officer *de facto*, under an unconstitutional statute, but not yet judicially determined to be so, has a right to protect his possession and quiet enjoyment thereof by the remedy of injunction.
2. Title to an office can not be collaterally attacked, nor can the constitutionality of an act of the legislature relating to such office be determined, in a proceeding in contempt for violating a decree of injunction.
3. The fact that a defendant to a proceeding in contempt is compelled to testify does not constitute prejudicial error, where the evidence exclusive of that given by such defendant conclusively establishes a violation of a decree in injunction.

(Decided June 1, 1917.)

ERROR: Court of Appeals for Lorain county.

*Mr. F. M. Stevens,* for plaintiffs in error:

*Mr. L. D. Hamlin; Mr. C. G. Washburn* and *Messrs. Stroup, Fauver & Rice,* for defendant in error.

LIEGHLEY, J. The parties stood in reverse order in the court below, and will be named herein as they stood below.

The legislature of Ohio at its session of 1915 amended Section 4276, General Code. As amended and set forth in 106 Ohio Laws, 483, it reads as follows:

"SEC. 4276. The auditor shall keep the books of the city, exhibit accurate statements of all moneys received and expended, and of all property owned by the city and the income derived therefrom, and of all taxes and assessments. In cities having a population of less than twenty thousand the city council may, by a majority vote, merge the duties of the clerk of the water works, if any, clerk of the board of control and clerk of the city council with the duties of the city auditor, allowing him such additional assistants in performing such additional duties as council may determine."

Under favor of this section the city council of the city of Elyria passed the necessary legislation merging the office of city clerk with that of city auditor. Subsequently one C. M. Braman was duly elected to fill said merged office and served as city auditor under the merger from January 1, 1916, to about December 30, 1916, during which period the defendant, Rose Moriarity, acted as his deputy clerk. Said Braman resigned his said office about December 30, 1916, and his resignation was duly

accepted by the mayor of the city of Elyria, and thereupon, as provided by law, the mayor appointed as his successor the plaintiff, Robert H. Rice, to fill the office made vacant by the resignation of said Braman. Said Rice did not appoint the defendant, Rose Moriarity, as his deputy. The said Rice took possession of all the papers, books, files, etc., found in the office of Braman, and presumably succeeded to all the privileges, rights and duties appertaining to said office. Said Rice acted as city clerk at the council meeting on January 2, 1917. His failure to appoint the defendant, Rose Moriarity, as deputy clerk or auditor precipitated official differences and difficulties which took the alleged form of interference with him in his possession of said office of auditor.

On January 6, 1917, the plaintiff filed a petition in the common pleas court to restrain the defendants, Dan. B. Symons and Rose Moriarity, from attempting in any manner to discharge the duties of clerk of the city council of Elyria or the duties of city auditor of said city, and from attempting in any manner to take possession of said office or the books and records thereof. Upon hearing a perpetual injunction substantially as prayed for was decreed by the court below.

Thereafter the acts and conduct of the defendant Rose Moriarity, in and about an endeavor to obtain possession of the insignia of office held by the plaintiff, resulted in an application for an issuance of a citation to defendant Rose Moriarity to show cause why she should not be punished for contempt for a violation of the restraining order theretofore issued by the court. Said defendant

appeared, and after full trial the court below decided that defendant Rose Moriarity was guilty of contempt of court as claimed by plaintiff and imposed a fine of $25 and costs.

It is claimed by defendant Rose Moriarity that there is error in the proceedings below in the following particulars:

1. That the act of the legislature above quoted is unconstitutional, and for that reason the court below was without jurisdiction to issue the restraining order, and that said injunction is therefore a nullity.

2. That being void, the court is without jurisdiction to entertain any proceedings in contempt for a violation thereof.

3. That the court erred in requiring her to testify at the hearing in contempt.

4. That even if the court had jurisdiction to issue the order and try the accused, the evidence fails to show a violation thereof by her.

It is undisputed in the case that Braman performed the duties of a public officer, which duties were public duties, during the year 1916, and during all of which time the defendant was his deputy, and at no time during said period did the defendant or any one else question the validity of the public acts of said Braman. When he resigned and Rice succeeded him, said Rice inherited and succeeded to all the rights, privileges and duties of the office, as merged, that Braman had. The office of Braman as such was created by the council under favor of an act of the legislature, and Braman was elected for a specific term. The duties which Braman had discharged and which Rice undertook to

perform by his acceptance of the appointment by the mayor were public duties. He had the reputation of being an officer of the city of Elyria. He was discharging public official acts. He was proceeding in the performance of his duties under color of office derived from the authority of a legislative enactment. It seems to us that under these circumstances all the requirements of the definition of a *de facto* officer are present. *State, ex rel. Whitbeck,* v. *Alling,* 12 Ohio, 16, 20; and *Ex parte Jacob W. Strang,* 21 Ohio St., 610, 617.

It was urged at the hearing that there could not be a *de facto* officer without there being an office *de jure.* Repeating, the office as merged was created by a statute of the state, above quoted. The council acted under favor of that statute and merged the office of city clerk with that of city auditor. Braman was elected to fill that office, the duties of which are public duties, resigned, and the plaintiff succeeded him by appointment to fill the vacancy. The duties of the plaintiff consisted of acts required of a nature in which there is a public interest. On this subject the supreme court has spoken in *State of Ohio* v. *Gardner,* 54 Ohio St., 24, at page 31: "If the official acts of officers, acting in an office created by an unconstitutional statute, should be regarded as falling within the principle that sustains the act of *de facto* officers, until the statute has been held unconstitutional by competent judicial authority in a proceeding appropriate to that end, all difficulty vanishes. The opposite doctrine is based upon the assertion that there can be no *de facto* officer unless there is a *de jure* office. That is a simple and summary way to dispose of

this grave question. That there can be no *de jure*
officer without a *de jure* office is a proposition to
which all minds will, of course, assent. But that
there can be a *de facto* officer without a *de jure*
office, is disputable, if the phrase '*de facto* officer'
includes one who in fact discharged the duties of
a public office, recognized by the great body of the
people and by virtue of a statute solemnly passed
by the general assembly of the state, which may be
unconstitutional. That there have been many offi-
cers who occupied and discharged the duties of
offices created by laws that were afterwards held
unconstitutional is a fact well known to every one.
While in such occupancy innumerable official acts,
affecting both public and private rights, may have
been actually performed by them; the duration of
the office may, and often does, extend through a
series of years."

Also at page 32: "These officers are either usurp-
ers and trespassers, or *de facto* officers; if the lat-
ter, the rights of the public, or of individuals who
have submitted to their authority, or acquiesced in
its exercise, would be unaffected by a subsequent
authoritative judicial declaration that the statute
was unconstitutional; if they were usurpers merely,
every official act would be a nullity, and intermin-
able confusion possibly follow such a decision. Were
such results to follow, the courts might well pause,
before declaring unconstitutional an act establish-
ing a city government, unless its constitutionality
was challenged upon the threshold of its existence."
At page 33: "We think that principle of public
policy, declared by the English courts three cen-
turies ago, which gave validity to the official acts

of persons who intruded themselves into an office to which they had not been legally appointed, is as applicable to the conditions now presented as they were to the conditions that then confronted the English judiciary. We are not required to find a name by which officers are to be known, who have acted under a statute that has subsequently been declared unconstitutional, though we think such officers might aptly be called *'de facto* officers.' They actually performed official acts authorized by a statute solemnly enacted by the law making department of the government. Such a statute is presumed to be constitutional. *Railroad* v. *Commissioners of Clinton County,* 1 Ohio St., *77.* The unbroken current of authority supports this proposition."

It has not yet been proclaimed to be the law that an individual who questions the right of another to the title and possession of an office may obtain the possession thereof by the use of force or studied interference with the exercise thereof by the incumbent. One who is in possession of an office, whether as an officer *de jure* or an officer *de facto* under a statute unconstitutional, but not yet judicially determined to be so, has a right to protect his possession and quiet enjoyment thereof by the remedy of injunction. "The remedy by injunction may be employed by the incumbent of a public office to protect his possession against the interference of an adverse claimant whose title is in dispute, until the latter shall establish his title at law; but it is not the appropriate remedy to try the title to a public office, or to determine questions concerning the

authority to make appointments thereto." *Holbrock* v. *Smedley,* 79 Ohio St., 391, 397.

If the title to the office held by the plaintiff is sought to be questioned, *quo warranto* is the proper remedy. *Harding* v. *Eichinger,* 57 Ohio St., 371, 374.

Under the authorities above cited, and those following, we hold that the title to the office of which the plaintiff, by the proof, is in possession can not be attacked collaterally, nor is the constitutionality of the statute above quoted a subject-matter for determination in this lawsuit. It is immaterial in the decision of this case whether this statute offends the constitution or not. *Kirker* v. *Cincinnati,* 48 Ohio St., 507, and *In the Matter of Habeas Corpus for Charles Derrick,* 11 C. C., N. S., 518.

We therefore hold that the court below had jurisdiction of the person and the subject-matter, and had authority to issue the restraining order, at the instance of plaintiff, in his endeavor, which was his right, to protect his incumbency of the office to which he was appointed.

It is further claimed, however, that the defendant did not violate the order. Also it is claimed that the court erred in requiring her to testify. An examination of the proof, however, exclusive of the testimony given by the defendant, discloses a course of conduct, in and about her endeavor to embarrass the plaintiff in his possession of said office and hinder and interfere with his performance of the duties thereof, of such a character as makes her claim untenable. The testimony of the chief of police of what she said and did on the 20th day of February, 1917; the testimony in respect to some "rump"

council meeting held elsewhere than in the council chamber preceding the meeting of February 20, 1917; the testimony in respect to her conversations with newspaper representatives; her speech to the council; the presence of her brother-in-law at a council meeting to act as deputy clerk for the purposes of that meeting, and many other items of evidence in the proof, require us to reach the irresistible conclusion that the object and purpose of these words, acts and deeds on her part were well calculated to interfere with the plaintiff in his possession of said office. We are unable to see how any other conclusion could be reached from the proof, independent of anything said by her at the hearing.

We find no error in the record prejudicial to the rights of the defendant, and the judgment of the court below is therefore affirmed.

*Judgment affirmed.*

GRANT and CARPENTER, JJ., concur.