**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2807
_____

ALONZO PRICE,
                                        Appellant

v.

CHARLES WARREN;
ATTORNEY GENERAL OF THE STATE OF NEW JERSEY;
JEFFREY S. CHIESA

_____

On Appeal from the United States District Court
for the District of New Jersey
(D. C. Civil Action No. 1-12-cv-02238)
District Judge:  Honorable Robert B. Kugler

_____

Argued on July 11, 2017

Before:  MCKEE, AMBRO and ROTH, <u>Circuit Judges</u>

(Opinion filed: March 14, 2018)

Sean E. Andrussier, Esq.    **(ARGUED)**
Chase Harrington
Kathleen Perkins
Laura Revolinski
Christine Umeh
Wenbo Zhang
Duke University School of Law
210 Science Drive
Box 90360
Durham, NC 27708
                Counsel for Appellant

Gretchen A. Pickering, Esq.    **(ARGUED)**
Cape May County Office of Prosecutor
4 Moore Road
DN-110
Cape May Court House, NJ 08210

Counsel for Appellee

---

**OPINION**[*]

---

ROTH, Circuit Judge

Following two robberies that occurred on June 22 and 29, 2000, Alonzo Price was tried, convicted, and sentenced to a term of life in prison, plus thirty years. At his trial, the sole piece of evidence squarely linking him to the robberies was a cigarette butt with his DNA on it. The butt was allegedly recovered from one of the crime scenes. However, the chain of custody of this cigarette butt was poorly documented, raising the possibility that the butt with Price's DNA on it did not come from the crime scene. Despite this irregularity, defense counsel never addressed the chain of custody at trial. Price has filed for a writ of habeas corpus, arguing that his counsel provided ineffective assistance in violation of the Sixth Amendment because counsel failed to attack the chain of custody of the cigarette butt. We conclude that counsel was ineffective and that Price was prejudiced thereby. Thus, we will grant the writ.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

## I. Background

### A. Facts

The two robberies were conducted in a similar manner: In each, the robber cut open a window screen to enter the victim's home in the early hours of a Thursday morning, threatened the victim with a sharp object, climbed on top of her, bound her hands with torn strips of her bedding, and stole jewelry and cash before leaving. The victims, Sadie Hamer and Mary Perez, gave fairly similar descriptions of the robber: an African American male, roughly 5'9" and 175 pounds (or "medium build"), wearing a red shirt during the Hamer robbery and a gray shirt and denim shorts during the Perez robbery.[1] Perez described his breath as smelling of cigarettes and possibly alcohol.[2]

Each victim called the police, and several officers, including Detective William Scull, responded. Mary Perez told the officers that the voice of the robber sounded like Price,[3] that it might be Price,[4] and that the robber might have been trying to disguise his voice.[5] She knew Price because he was a customer at the pharmacy where she worked part-time.[6] However, she did not want to rule anyone out.[7]

Perez had told the robber that she had money in her purse in her car nearby. It was when he left her apartment to find the purse that she called the police. When officers

---

[1] App. 209, 229, 242-43.
[2] App. 100.
[3] App. 179.
[4] App. 351
[5] App. 103.
[6] App. 119.
[7] Hamer also knew Price—they had known each other all their lives, App. 253—and she heard the robber's voice, but she did not specifically identify Price as the robber.

3

searched Perez's car, they found a pair of scissors that did not belong to her. During the robbery, the robber had held something sharp against Perez's neck. Police suspected that the scissors may have been that sharp object. None of the police officers who came to Perez's apartment that night to investigate the robbery saw a cigarette butt on the roof outside the cut window screen.

Although the description of the robber did not match Price's size and weight -- his height is 6'3" and at the time he weighed 225 pounds -- Scull and Detective Karl Ulbrich arrested Price at his place of work on the afternoon after the Perez robbery.[8]

On that evening, Perez returned briefly to her apartment with two friends, one of whom was Carmen Pierce. Pierce noticed a filterless cigarette butt on the roof outside the window through which the robber had entered. Pierce went out on the roof and picked up the butt, using a tissue. Perez and Pierce contacted the police, and Scull came to collect the cigarette butt. Accounts differ regarding what Scull did next with the cigarette butt, but he appears to have placed it into an envelope of some sort.[9] He took no notes or photographs[10] of the cigarette butt and did not log in the butt,[11] even though he had recorded in a log the other items that he recovered from the scene. The first written reference to the cigarette butt is a week later, when the evidence was sent to a lab for

---

[8] They created an arrest warrant related to an old traffic matter, but the arrest warrant was invalid; it was not signed by a judicial officer.

[9] Perez testified that she saw Scull place the cigarette butt in a plastic bag, although Scull said that he placed the item in an envelope; Scull and Pierce both identified the envelope at trial.

[10] Four months later, he returned to take pictures that used a paint can lid to show where the butt was found, but the lid was placed inaccurately. App. 140.

[11] App. 355.

testing. The date on the lab paperwork is faded, but there is no dispute that it reads July 6, 2000.[12] Scull later wrote that he turned the envelope containing the cigarette butt over to Ulbrich. However, although Ulbrich's investigation report mentions every piece of evidence that he handled and notes that these items were secured in the police station's temporary evidence locker, the report does not say the same of the cigarette butt. Ulbrich's report states merely that "Scull took the item into evidence and obtained the information regarding it's discovery and collection."[13] He nowhere states that Scull gave the butt to him.

A few hours after collecting the cigarette butt, Scull and other officers executed a search warrant on Price's room in the boarding house where he lived. They found an ashtray full of filtered and unfiltered cigarette butts.[14] Price claims that it was one of these butts that was substituted by the police for the butt found on the roof and that was then found to contain Price's DNA.

As a result of the search, the officers seized a gray T-shirt and a pair of denim shorts.[15] They did not find a red T-shirt or any of the missing jewelry or money.

Following the investigation, the one piece of tangible evidence that directly connected Price to the robberies was the cigarette butt. Pierce was not able to verify at trial that it was the same butt that she had recovered from the roof; by the time of trial,

---

[12] *See* 3d Cir. Dec. 20, 2016 Modified Record, p. 213; *see also id.* at 168; Appellant Br. 5.
[13] App. 355.
[14] App. 187.
[15] App. 188.

lab testing had shredded the butt.[16]  Scull did testify that it was the same butt.  The State

lab tested the butt that was sent to the lab by the police and found that saliva on the butt

contained DNA matching Price's DNA.  This result placed Price outside the window to

Perez's apartment around the time of the robberies.[17]

The remaining evidence was mixed.  Price owned a pair of scissors similar to

those found in Perez's car,[18] his landlady testified that she had seen Price in their shared

bathroom cutting his hair with the scissors;[19] but, when at trial, she saw the scissors found

in Perez's car, she said that Price's scissors were larger;[20] the gray T-shirt from Price's

room had red fibers on it, but those red fibers did not match anything from either victim's

residence;[21] and the torn parts of the pillow shams, which the State initially had argued

were held in the robber's teeth while he tied up the victims,[22] had saliva with DNA that

did not match Price's DNA.  Furthermore, none of the physical evidence from the Hamer

crime scene was connected with Price, and the State later stipulated that human hair

---

[16] App. 137.

[17] It had been lightly raining or misty the night of the Perez robbery and had been raining on previous nights so that it was unlikely that the butt would have remained in relatively good condition if it had been there for very long.  Scull testified that when he first saw the butt it was in relatively good condition.  App. 272.  Thus, if Price had left the butt on the roof, he had done so recently.

[18] App. 151-52.

[19] App. 153.  When the officers searched Price's room, they did not search the bathroom. App. 296.

[20] Perez's landlord, who had seen Price's scissors, testified to this effect.  App. 160 ("These look smaller."); App. 161 ("To me I think [Price's scissors] were bigger.").  The search of Price's room, did not turn up any scissors.

[21] App. 310-11.

[22] Dkt. 9-17, Exhibit A.  The State argued this point to the grand jury before knowing the results of the DNA tests.

6

recovered from one or both of the scenes, which was suspected to be from the robber, did not come from Price.[23]

Other items suggested a possible connection between Price and at least the Perez robbery: The denim shorts recovered from Price's room contained cedar fibers, and the roof outside Perez's window had cedar shingles;[24] the carpet fibers found on the denim shorts recovered from Price's room were of the same material and colored with the same type of dye as those in Perez's carpet.[25] However, Price worked in a recycling facility,[26] and no one at trial was able to exclude the possibility that Price encountered those materials on the job (or somewhere other than Perez's home).

### B. Procedural History

In August 2004, in New Jersey Superior Court, Price was tried and convicted of burglary, robbery, and a number of other charges related to the Hamer and Perez robberies.[27] On November 15, 2006, the Superior Court's Appellate Division affirmed all convictions except one not relevant here. On March 17, 2007, the New Jersey Supreme Court denied a petition for certification.

On April 23, 2007, Price filed *pro se* for postconviction relief (PCR) and was appointed an attorney. PCR counsel raised numerous claims, including an ineffective

---

[23] Dkt. 9-17, p. 1. The State so stipulated because it was required to do so in the procedural posture in which it appeared. Dkt. 10-15, p. 26 (Tr. 48-49). At a minimum, it is not known whether the hair, if tested, would match Price's.

[24] App. 305-06.

[25] App. 311, 314.

[26] App. 180.

[27] Price was initially tried and convicted in 2001, but his conviction was overturned on appeal due to a juror issue not relevant here.

7

assistance of counsel claim based on the failure of defense counsel at trial to challenge the chain of custody of the cigarette butt.[28] On January 14, 2009, the PCR court denied relief. Price appealed *pro se*. On March 8, 2011, the Appellate Division affirmed.[29] On July 22, 2011, the New Jersey Supreme Court denied a petition for certification.

In April 2012, Price filed a *pro se* federal habeas corpus petition raising several claims, which the District Court denied on June 30, 2015.[30] On August 25, 2016, this Court granted a certificate of appealability "on the issue of whether trial counsel was ineffective for failing to request suppression or otherwise challenge the chain of custody of the cigarette butt that was admitted into evidence."[31]

## II. Discussion[32]

### A. Standard of Review

In this case, we directly review the District Court's opinion, to which we give no deference because the District Court did not hold an evidentiary hearing.[33] The District Court collaterally "review[ed] the 'last reasoned decision' of the state courts on the

---

[28] *See, e.g.*, Dkt. 10-15, p. 5 (Tr. 6) ("[The] chain of custody is where to start and no one went there."); *Id.* p. 9 (Tr. 15) ("[I]n a DNA case, you look at chain of custody. That's the first place you go. They didn't do that. They didn't make the argument about chain of custody."); *see also* Dkt. 9-15, p. 12 ("CIGARETTE BUTT—CHAIN OF CUSTODY").

[29] Dkt. 9-22.

[30] *Price v. Warren*, No. 12-2238, 2015 WL 3970124 (D.N.J. June 30, 2015).

[31] App. 71.

[32] The District Court had jurisdiction over this habeas petition under 28 U.S.C. § 2254; we have jurisdiction under 28 U.S.C. §§ 1291 and 2253.

[33] *Branch v. Sweeney*, 758 F.3d 226, 232 (3d Cir. 2014) ("Because the District Court did not hold an evidentiary hearing and, instead, based its decision on its review of the state court record, we apply a plenary standard of review of its decision and order.") (citing *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001)).

8

petitioner's claims."[34]  We cannot grant a writ of habeas corpus to a state prisoner unless the last reasoned state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[35]

Here, the District Court correctly determined that the last reasoned state court decision was that of the Appellate Division.  In declining to grant the writ, the District Court largely relied on the reasoning of the Appellate Division, so we will primarily review the Appellate Division's opinion.[36]

## B. Ineffective Assistance of Counsel

The claim made in the state courts and renewed here is that defense counsel provided ineffective assistance of counsel.[37]  We review such claims under the standards in *Strickland v. Washington*,[38] which has two prongs:  performance and prejudice.

## 1. Performance

Under *Strickland*, we first must consider whether "counsel's representation fell below an objective standard of reasonableness."[39]  "A convicted defendant making a

---

[34] *Robinson v. Beard*, 762 F.3d 316, 324 (3d Cir. 2014) (citing *Simmons v. Beard*, 590 F.3d 223, 231-32 (3d Cir. 2009)).
[35] 28 U.S.C. § 2254(d).
[36] The Appellate Division adopted a portion of the PCR court's reasoning; we will treat that portion as part of the Appellate Division's opinion as well.
[37] Price made numerous other claims in the state courts, but no others are before us.
[38] 466 U.S. 668, 687 (1984).
[39] *Outten v. Kearney*, 464 F.3d 401, 414 (3d Cir. 2006) (citing *Strickland*, 466 U.S. at 687-88).

claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."[40] "[A] single, serious error may support a claim of ineffective assistance of counsel . . .."[41]

Here, Price argues that defense counsel should have addressed the chain of custody of the cigarette butt. Under New Jersey law, ordinarily "a defect in the chain of custody goes to the weight . . . of the evidence introduced."[42] Hence, we consider whether counsel should have argued to the jury that the defects in the chain of custody here suggest that the cigarette butt should be disregarded as unreliable.[43]

The Appellate Division provided two reasons for holding that counsel's performance was not deficient. First, the Appellate Division observed the sequence of events: Pierce found the butt, Scull retrieved it, and then Scull and other officers searched Price's room. From this sequence, the Appellate Division concluded that officers could not have planted a butt from Price's home before Pierce found it; they did not have access to Price's home until afterward.[44] Hence, the Appellate Division concluded that a chain of custody argument would have been implausible, and counsel was not deficient for failing to advance an implausible argument.

---

[40] *Strickland*, 466 U.S. at 690.

[41] *Kimmelman v. Morrison*, 477 U.S. 365, 383 (1986).

[42] *State v. Morton*, 715 A.2d 228, 260 (N.J. 1998) (quoting *United States v. Matta-Ballesteros*, 71 F.3d 754, 769 (9th Cir. 1995)) (internal quotation marks omitted).

[43] Price also argues that counsel should have filed a motion to suppress the cigarette butt before trial. Because we decide that counsel was ineffective for failing to challenge the chain of custody during trial, we do not address whether counsel also should have filed a motion to suppress before trial.

[44] Dkt. 9-22, p. 4.

However, this analysis depends on a serious error. The chain of custody refers to what happens to evidence *after* the police retrieve it, not *before*. The fact that officers could not have planted the cigarette butt before retrieving it has no bearing on whether officers mishandled the butt after retrieving it. The Appellate Division's apparent determination otherwise was an unreasonable determination of fact.

Second, the Appellate Division asserted that Price's defense counsel was not deficient because she had "attempted unsuccessfully to discredit the cigarette butt's chain of custody."[45] This, too, was an unreasonable determination of fact. The Appellate Division was referring to defense counsel's argument that Price might not have left the butt on the roof before the robbery; instead, he might have gone to the store under Perez's apartment during the day after the robbery and flipped the cigarette butt onto the roof then.[46] This is not a chain of custody argument; counsel's argument referred to what happened *before* Scull retrieved the butt, not *after*.

If we focus on what happened after Pierce gave the butt to Scull, the trial transcripts show that Price's counsel never attempted to discredit the chain of custody of the cigarette butt. To the contrary, she conceded that the cigarette butt that was tested was the butt found by Pierce – *i.e.*, that the chain of custody was beyond question.[47] This concession demonstrates further ineffective assistance of counsel. The concession

---

[45] Dkt. 9-22, p. 4.

[46] This probably was not possible; Price was at work or under arrest for all or nearly all of the relevant period.

[47] *See* App. 333 ("[Piece] went and got [the cigarette butt] and gave it to Detective Scull. . . . We know that ultimately it's tested. And that the DNA is linked to, reasonable certainty to Alonzo Price. It was his cigarette.").

negated any possible attack on the chain of custody after Pierce gave the butt to Scull on the evening of June 22. It was, however, during this period that the records of custody are lacking.

Accordingly, we conclude that the state court's adjudication of Price's ineffective assistance claim depended on unreasonable determinations of fact. For this reason, we will not defer to it under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). When we have so concluded, but our reasons for rejecting AEDPA deference do not in themselves decide the merits of the claim, we next consider the claim *de novo*.[48] Thus, we now must evaluate the performance prong.

Clearly, competent counsel would have addressed the chain of custody. The cigarette butt was the single most important piece of evidence for the prosecution,[49] and the chain of custody was the single greatest weakness in that evidence. Cigarette butts are ubiquitous, almost indistinguishable, and easily substituted one for another by a person wishing to do so. Here, there were considerable irregularities in the documentation of the butt. As a result, defense counsel should argue that Scull (or

---

[48] *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) ("If we determine, considering only the evidence before the state court, that . . . the state court's decision was based on an unreasonable determination of the facts, we evaluate the claim *de novo* . . .."); *Siehl v. Grace*, 561 F.3d 189, 196 (3d Cir. 2009) ("[A]ssessing the ineffective assistance claim in light of all the circumstances, we conclude that the Superior Court's application of Strickland in this case was not objectively reasonable and that the District Court was entitled to review the record *de novo*.").

[49] The prosecution placed considerable emphasis on the cigarette butt throughout the trial, including opening and closing arguments. *See* Dkt. 10-6, p. 37 (presenting the cigarette butt as the penultimate piece of evidence in opening argument and described it as establishing "[b]eyond a shadow of a doubt" that Price committed the Perez robbery.); App. 336 (ending closing argument by discussing the cigarette butt).

another officer) may have had the butt from Perez's apartment in his possession when the officers found many similar butts in Price's room and should have explored whether any of the officers present, intentionally or unintentionally, switched one butt for another. Under these circumstances, defense counsel's failure to challenge the chain of custody was an inexcusable failure on the part of that attorney. Moreover, to concede that the butt tested at the lab was the same butt found on the roof was an even greater demonstration of ineffectiveness.

As the New Jersey courts have held: "[W]here the incriminating object has passed out of the possession of the original receiver and into the possession of others, the 'chain of possession' must be established to avoid any inference that there has been substitution or tampering."[50] We can find no rational reason here why an effective attorney would not challenge the custody of the cigarette butt between the time when Pierce gave it to Scull and the time when it was produced in the courtroom.

## 2. Prejudice

Under *Strickland*, we next ask whether "the deficient performance prejudiced the defense."[51] Prejudice is established when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

---

[50] *State v. Brown*, 238 A.2d 482, 484-84 (N.J. Super. 1968) (citing *State v. Johnson*, 216 F.2d 397 (N.J.Super 1965) *affirmed* 216 A.2d 392 (N.J. 1966)).
[51] *Strickland*, 466 U.S. at 687.

13

outcome."[52]  The Appellate Division did not address prejudice, so we consider prejudice

without any deference.[53]

     We believe that there is a reasonable probability that, had a chain of custody

challenge been made, the jury would have harbored reasonable doubt about the cigarette

butt:  Why wasn't it logged in as were the other exhibits?  Did a police officer,

deliberately or not, substitute it for one of the butts from the ash tray in Price's room?

Did that police officer want to nail Price for the robbery, particularly in view of the

conflicting nature of the evidence that the police were gathering?  A jury presented with

such doubt about the cigarette butt may not have voted to convict.  Also, if the jury chose

to disregard the butt due to the defects in its chain of custody, the remaining evidence

was mixed:  for example, the physical description of the suspect that didn't match Price,

the questions about the voice identification, the discrepancy in the size of the scissors, the

red fibers that didn't match anything at either victim's residence, the torn strips of pillow

shams that contained someone else's DNA, the recovered hair that wasn't Price's.  This

may well have created reasonable doubt in the mind of a juror.  If the jury began to doubt

police procedures regarding the cigarette butt, they might have become concerned about

the other pieces of evidence.[54]  In these circumstances, we are not confident in the

outcome of this trial; there is a reasonable probability that, but for counsel's failure to

---

[52] *Id.* at 694.

[53] *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007); *Rompilla v. Beard*, 545 U.S. 374, 390 (2005).

[54] *See Lambert v. Blackwell*, 387 F.3d 210, 256 (3d Cir. 2004) (describing the *falsus in uno, falsus in omnibus* principle, which permits a jury to disregard part or all of a witness's testimony if the witness has testified falsely about a material fact).

challenge the chain of custody of the cigarette butt, the result of the proceeding would have been different.

### III. Conclusion

For the foregoing reasons, we conclude that counsel was ineffective and that Price was prejudiced thereby. We will reverse the judgment of the District Court and direct that the writ of habeas corpus be granted. The State must release Price or grant him a new trial within six months of the date of the judgment accompanying this opinion.